1

2

3

4

5

6                            UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

RICHARD W. LEWIS,                          )

9                                          )
                                           )
10             Plaintiff,                   )              03:99-CV-00386-LRH-RAM
                                           )
11    v.                                    )
                                           )              ORDER
12   LINDA AND TYRONE DUFF,                  )
                                           )
13             Defendants.                  )
                                           )

14

15   **I.     Factual and Procedural History**

16          On July 10, 2003, United States District Judge Edward Reed entered default judgment

17   against Linda and Tyrone Duff ("the Duffs") in an action brought by Plaintiff Richard Lewis

18   ("Lewis") alleging civil rights violations.  (July 11, 2003, Min. Order (#299).)  Long after the other

19   defendants in the action secured summary judgment in their favor (July 5, 2002, Order (#232)), the

20   Duffs still remained in the case.

21          The Duffs failed to appear before the court despite repeated warnings, *see, e.g.*, (June 19,

22   2003, Min. Order (#296)), failed to reasonably participate in discovery, *see, e.g.*, (Mot. to Compel

23   (#171)), filed untimely pleadings, *see, e.g.*, (Mot. to Dismiss (#279)), filed duplicative and legally

24   frivolous pleadings, *see, e.g.*, (Resp. (#313)), accused the presiding judge of corruption and "mental

25   impairment," *id*. at 22:6, accused the United States District Court, District of Nevada of being a

26   "criminal enterprise," *id*. at 22:9, and proclaimed to the court their refusal to personally participate

1    in the action (Resp. (#283)).  The court warned the Duffs that continued refusal to participate

2    would result in default judgment and ordered the Duffs to participate in the production of the

3    Pretrial Order (May 6, 2003, Min. Order (#286)), but the Duffs, though still filing documents,

4    continued to refuse personal participation (Report & Recommendation (#294)).  In a hearing on

5    damages following default judgment, at which the Duffs did not appear, the court awarded Lewis

6    $280,000 in compensatory damages and $50,000 in punitive damages (June 27, 2004, Hr'g (#320)).

7    The Duffs appealed this award (#343).  The Ninth Circuit reversed the default judgment and

8    remanded for the imposition of a "more appropriate sanction" against the Duffs.  (Sec. Req. for

9    Case Status (#376), Ninth Circuit Memo. Ex. A.)  Judge Reed subsequently recused, and the case

10   was reassigned to this court for determination upon remand (#366).  On July 29, 2008, this court

11   ordered the Duffs to show cause as to why their conduct does not warrant sanctions.  The Duffs,

12   consistent with their prior treatment of this litigation, failed to respond.

13   **II.    Legal Standard**

14   There are three sources of general sanctioning power: Rule 11 of the Federal Rules of Civil

15   Procedure, 18 U.S.C. § 1927, and a court's inherent power to regulate itself.  *United States v. Int'l*

16   *Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d

17   1338, 1343 (2d Cir. 1991).  Ordinarily, a court should rely on the Rules or statutory authority unless

18   these sources are not "up to the task." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

19   **A.   Rule 11**

20   The first source of sanctioning power is Rule 11.  One of the fundamental purposes of Rule

21   11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers,"

22   thereby avoiding delay and unnecessary expense in litigation. *Christian v. Mattel, Inc.*, 286 F.3d

23   1118, 1131 (9th Cir. 2002) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d

24   1531, 1537 (9th Cir. 1986)).  Rule 11 provides, in pertinent part,

25   (b) By presenting to the court a pleading, written motion, or other paper–whether by

26
                                                          2

signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

. . .

(c)(4) . . . The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11.  By its terms, Rule 11 sanctions apply only to documents parties submit to the court, not to the conduct of those parties.  *Christian*, 286 F.3d at 1130.  The court may consider the deficiencies of each contention individually, rather than of the document as a whole, in determining sanctions.  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364-65 (9th Cir. 1990) (en banc).  Each party has a duty prior to filing a document to conduct a reasonable factual investigation and to perform adequate legal research confirming that the positions taken in the document are warranted by existing law or a good faith alteration of existing law.  *Id.* at 1126.  In determining whether the factual and legal inquiry was reasonable, the court applies an objective standard of reasonableness.  *Brotherhood*, 948 F.2d at 1344.

Rule 11 sanctions are applicable to nonattorney pro se parties under a somewhat lessened standard of reasonableness, though sanctions are appropriate if a filing is clearly frivolous.  *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).  In addition, the court may impose sanctions on its own initiative only after issuing a show cause order, detailing the sanctionable conduct and inquiring as to why sanctions should not be imposed.  Fed. R. Civ. P. 11 advisory committee notes subsections (b) and (c).  Rule 11 sanctions must be aimed at deterrence, not punishment.  Fed. R. Civ. P. 11(c)(4).

**B.  28 U.S.C. § 1927**

Sanctions are also available through 28 U.S.C. § 1927.  Section 1927 provides,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  A § 1927 sanction differs from a Rule 11 sanction by requiring a heightened showing of bad faith, by allowing the court to impose an award of fees sua sponte, and by bringing conduct outside of the pleadings within the ambit of sanctionable activities.  *See* Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives, and Preventative Measures* 760-62 (Richard G. Johnson ed., 3d ed. 2003).

As a penal statute, § 1927 discourages unnecessary delays in litigation by requiring the offending party to compensate other litigants for costs due to the dilatory conduct.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759-62 (1980).  In this circuit, a pro se litigant is subject to a § 1927 sanction.  *See Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990); *Brown v. Adidas Int'l*, 938 F. Supp. 628, 636 (S.D. Cal 1996).

A sanction under § 1927 requires a showing that the offending party (1) multiplied the proceedings (2) in a vexatious manner, causing (3) an increase in the cost of proceedings.  *Shields v. Shetler*, 120 F.R.D. 123, 127 (D. Colo. 1988).  A "vexatious" multiplication of the proceedings occurs when the party acts recklessly or with bad faith.  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).  Before a court imposes § 1927 sanctions, the offending party must be given notice and an opportunity to be heard.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*, 809 F.2d 626, 638 (9th Cir. 1987).  Apprisal by the court that an offending party stands accused of having acted in bad faith is sufficient to achieve notice.  *See In re DeVille*, 361 F.3d 539, 549 (9th Cir. 2004).

### C.  Inherent Power

A third source of sanctioning authority lies in the court's inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v.*

4

*NASCO, Inc.*, 501 U.S. 32, 43 (1991).  In this circuit, courts have the discretion to rely on their inherent authority instead of rule-based or statutory authority.  *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001); *but see Klein v. Stahl GmbH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999) (holding inherent sanctioning power is a sanctioning power of last resort).  A sanction pursuant to the court's inherent power requires a showing of subjective bad faith and must comply with the strictures of due process: notice and an opportunity to defend.  *In re Deville*, 361 F.3d at 548-50.  Since the scope of the inherent-power sanction is broad–encompassing, for example, the imposition of attorney's fees if a court finds that "the very temple of justice has been defiled," *In re DeVille*, 361 F.3d at 545 (quoting *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946))–courts favor restraint and discretion in its exercise, often requiring a particularized showing of bad faith.  *See Brotherhood*, 948 F.2d at 1345; *see also Christian*, 286 F.3d at 1131.

**III.   Discussion**

   **A.  Sanctions**

   There have been nearly 400 filings in this case, many of which have meandered to 150 pages and beyond.  *See, e.g.*, (Resp. (#313)).  Approximately half of the filings have limped along on the waning legitimacy of the dispute between Lewis and the Duffs.  It now appears that Lewis cannot win, that the Duffs cannot escape sanctions, and that yet another court must address the dregs of what was initially a baseless action.  *See* (July 5, 2002, Order (#232)).

   This action has clogged the court for nearly ten years.  The public's interest in expeditious resolution of litigation, the court's need to manage its docket, and the insufficiency of less drastic alternatives warrant the complete disposition of this case without further filings by the parties.  *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (discussing sanctions pursuant to Fed. R. Civ. P. 16).  Moreover, the requirement of "just, speedy, and inexpensive" disposition of cases, enshrined in the Federal Rules, suggests that the court ought to resolve this action's loose ends as quickly as possible.  Fed. R. Civ. P. 1; *see also People of State of N.Y. v. Operation Rescue Nat'l*,

1  80 F.3d 64, 73 (2d Cir. 1996).  After all, "[e]ven the Trojan War lasted only ten years." *Indiana*

2  *Harbor Belt R. Co. v. American Cyanamid Co.*, 916 F.2d 1172, 1183 (7th Cir. 1990).

3        In light of this court's mandate to impose sanctions and reluctance to encourage further

4  filings, Rule 11 sanctions are inappropriate.  Rule 11 sanctions reach only the parties' filings.

5  *Christian*, 286 F.3d at 1130.  Here, while the Duffs' filings certainly provide fodder for Rule 11,

6  the Duffs' failure to appear ultimately generated the default judgment.  *See* (May 6, 2003, Min.

7  Order (#286)).  As a failure to appear constitutes conduct outside of the filings, Rule 11 is not "up

8  to the task" of sanctioning the Duffs' most egregious misconduct.  *Chambers,* 501 U.S. at 50.

9        Similarly, § 1927, while a possible basis for sanctions against pro se parties, *Wages*, 915

10  F.2d at 1235-36, is not the best source for sanctioning the Duffs.  Section 1927's purpose is to

11  penalize the offending party by forcing him or her to compensate the party who incurred extra

12  expenses as a result of the misconduct.  *See Roadway Express*, 447 U.S. at 759-62.  Here, however,

13  both parties arguably "multiplied the proceedings" unnecessarily, increasing costs on both sides.

14  Therefore, the Duffs' sanctions should mainly address their abuse of the court–their defilement of

15  "the very temple of justice"–rather than compensation due Lewis.  The court, not the opposing

16  party, suffered the brunt of the Duffs' "feckless" conduct.  (Sec. Req. for Case Status (#376), Ninth

17  Circuit Memo. Ex. A.)

18        A court's inherent power may be an alternative ground, rather than a last-resort ground, for

19  imposing sanctions.  *Fink*, 239 F.3d at 993.  In order to impose sanctions pursuant to its inherent

20  power, a court must find subjective bad faith on the part of the offending party and respect the twin

21  pillars of due process: notice and an opportunity to be heard.  *In re Deville*, 361 F. 3d at 548-50.

22  Factors to consider in deciding whether to impose sanctions and what kind of sanctions to impose

23  include

24          [w]hether it was part of a pattern of activity, or an isolated event; whether it infected
        the entire pleading, or only one particular count or defense; whether the person has

25          engaged in similar conduct in other litigation; whether it was intended to injure; what
        effect it had on the litigation process in time or expense; whether the responsible person

26

1   is trained in the law; what amount, given the financial resources of the responsible
2   person, is needed to deter that person from repetition in the same case; what amount is
    needed to deter similar activity by other litigants.

3   Fed. R. Civ. P. 11 advisory committee notes subsections (b) and (c).

4          In the present case, the Duffs have shown subjective bad faith.  First, the Duffs threatened

5   the court with their absence in the event the court denied their motion to dismiss: "Should the court

6   Deny the Duff Defendants' fourth (4th) Motion to Dismiss, with prejudice, they will not participate

7   in this action any further."  (Resp. (#283) at 4:3-4.)  Following this salvo, the court warned the

8   Duffs that continued absences would merit a default judgment.  (May 6, 2003, Min. Order (#386).)

9   The Duffs' failed to personally appear at any subsequent hearings, even after the court repeatedly

10  called the Duffs, left messages for the Duffs, and offered to allow telephonic appearances.

11  (May 27, 2003, Min. Order (#289); Rep. & Rec. (#294).)  The Duffs' refusal to personally

12  participate in an action in which they frequently filed voluminous objections, motions, and requests

13  demonstrates disrespect for the court, abuse of the judicial system, and an obstinacy amounting to

14  bad faith.

15         Second, the Duffs filed untimely pleadings, *see, e.g.*, (Mot. to Dismiss (#279)), filed

16  duplicative and legally frivolous pleadings even after they had been given notice that such

17  pleadings were duplicative and frivolous, *see, e.g.*, (Resp. (#313), Rep. to Mot. to Dismiss (#314)),

18  accused the presiding judge of corruption and "mental impairment" (Resp. (#313) at 22:6), and

19  accused the United States District Court, District of Nevada of being a "criminal enterprise," *id*. at

20  22:9.  Nor is this the first time that the District of Nevada has suffered such barbs from the Duffs.

21  *See* Docket #3:04-CV-00059-LRH-RAM.  This pattern of conduct, substituting ad hominem

22  attacks and unsupported screeds for argument, implicates a bad faith use of the judicial system, the

23  needless occupation of the court's time and effort at the expense of more deserving litigants, and an

24  intent to defile "the very temple of justice" in retaliation for adverse rulings.

25         The Duffs have also had adequate notice of specific allegations of bad faith conduct.  Judge

26                                                    7

Reed warned the Duffs that sanctions–in the form of default judgment–could follow their continued failure to personally appear.  (May 6, 2003, Min. Order (#386).)  Moreover, the Duffs' awareness that they "stood accused of having acted in bad faith," shown by their reply to Judge Reed's warning (#287), is sufficient notice itself.  *In re Deville*, 361 F.3d at 550.  The Ninth Circuit's ruling, instructing this court to impose "more appropriate sanctions," further puts the Duffs on notice of impending sanctions.  (Sec. Req. for Case Status (#376), Ninth Circuit Memo. Ex. A.)  Finally, this court ordered the Duffs to show cause as to why their conduct does not warrant sanctions.  The court invited the Duffs to include a statement of their financial resources.  Nevertheless, the Duffs failed to respond.

The Duffs have also been afforded ample opportunity to defend against sanctions.  Indeed, the Duffs' have already defended against the specific allegation of their failure to appear.  *See* (Objection to Report & Recommendation (#298)).  That the Duffs defended against sanctions brought forth on a different legal basis–but predicated on the same conduct–is immaterial.  *See In re Deville*, 361 F.3d at 550.  Finally, the Duffs have made no attempt to explain their conduct or their filings even after receiving notice that the Ninth Circuit had directed this court to impose sanctions and this court's entering of an order to show cause.

In consonance with the grounds for the default judgment, the court finds the Duffs' intentional failure to appear to be their primary sanctionable conduct.  Additionally, however, sanctions are warranted for the Duffs' legally duplicative and frivolous filings.  Appropriate sanctions, therefore, are the following: first, and primarily, all future documents filed pro se by the Duffs–now residents of the state of Washington–with the District of Nevada must be reviewed by the court prior to being accepted by the clerk.  *See, e.g.*, *Williams v. Revlon Co.*, 156 F.R.D. 39, 44-45 (S.D.N.Y. 1994); *Pusch v. Social Sec. Admin.*, 811 F. Supp. 383, 388 (C.D. Ill. 1993); *McKeown v. LTV Steel Co.*, 117 F.R.D. 139, 144 (N.D. Ind. 1987).  This sanction addresses the kernel of the Duffs' sanctionable conduct by ensuring that the Duffs cannot continue to file frequent and

8

1  voluminous documents with the court while failing to adhere to the court's rules.  In addition, as

2  the Duffs' failure to appear was no doubt made more likely by their pro se status, this sanction

3  applies only to documents filed pro se.

4       Second, the Duffs are fined three times Lewis's increased costs specifically tied to the

5  Duffs' dilatory conduct which was determined upon the entry of default judgment.  Lewis has filed

6  an itemized statement of attorney time, services, and costs incurred as a result of the Duffs'

7  conduct.  This documents shows that Lewis incurred $7,566.66 in fees.  Additionally, counsel for

8  Lewis indicated that she spent an additional forty-five minutes of time in connection with this

9  court's order to show cause.  Thus, Lewis is entitled to $150 for this additional time.  As Lewis

10 incurred $7,716.66 in actual fees, the court will award Lewis $23,149.98 as a reasonable sanction

11 for the conduct of the Duffs' throughout this litigation.  This sanction will serve the purpose of

12 compensating Lewis and, more importantly, deterring such conduct. The court will further give

13 Lewis leave to seek any additional fees and costs in attempting to collect upon this award from the

14 Duffs.

15      **B. Judgment**

16      The Ninth Circuit reversed default judgment against the Duffs, citing *In re First T.D. &*

17 *Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001).  *First T.D.* holds, "If an action against the answering

18 defendants is decided in [the answering defendants'] favor, then the action should be dismissed

19 against both answering and defaulting defendants." *Id*.  Therefore, since the court dismissed the

20 answering defendants at summary judgment (July 5, 2002, Order (#232)), the court dismisses

21 Lewis's action against the Duffs with prejudice.

22 ///

23 ///

24 ///

25 ///

26                                          9

IT IS THEREFORE ORDERED that Lewis's claims against the Duffs are DISMISSED with prejudice.

IT IS FURTHER ORDERED that all future documents filed with the District of Nevada by Tyrone Duff or Linda Duff, when filed pro se, must be reviewed by the court prior to being accepted by the clerk.

IT IS FURTHER ORDERED that Linda and Tyrone Duff pay Lewis a monetary sanction of $23,149.98.  Judgment shall be entered in favor of Lewis in this amount.  Lewis may also seek recovery for reasonable fees and costs incurred in seeking to satisfy the judgment in his favor against the Duffs.

The Clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 3rd day of September 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

10